The opinion of the Court was delivered by
Mr. Justice Nott.
A motion is made to set aside the nonsuit in this case, on the ground that a Judge’s order is not necessary for the copy of an indictment, where no bill has been found by the Grand Jury. The rule of Court on that subject is in the following words:
“ A copy of the indictment, in cases of felony, shall be obtained by order of the Judge before whom the cause was brought, before an action of malicious prosecution shall be commenced.”
This Court is competent to give construction to its own rules, without the aid of other authorities ; bat as a diversity of opinion prevails among *209 my brethren, with regard to the expediency of this rule, as well as the construction of it, I have looked a little into the English books, to see if any light can be derived from that source. appears that as early as the 16 Car. 2d, a rule of Court was made by five of the English Judges, of whom the Chief Justices of the King’s Bench and Common Pleas were two;
“ That no copies of any indictment for felony be given without special order, upon motion in open Court, at the general gaol delivery, upon motion ; for the late frequency of actions against prosecutors, (which cannot be without copies of the indictments) deterred people from prosecuting for the King upon just occasions.” Kelyng, 3.
And Judge Blackstone says, that in prosecutions for felony, it is usual to deny a copy of the indictment, where there is the least probable cause to found such prosecution upon. From w'hence it would seem to be inferred, that an order of the Judge was necessary for that purpose. (3 Blades. Com. 126.) And a decision has been made in this Court, in a case, the title of which I do not recollect, that an action cannot be maintained, or rather, that a copy of the indictment shall not be received in evidence, unless obtained by an order of the Judge before whom the cause was brought. But in the case of Jordan vs. Lewis, 2d Strange, 1122, the Chief Justice (Lee) said, he could nót refuse to let the plaintiff read a copy of the indictment, for, he said, an ordbr was not *210 necessary to make it evidence. And, in Branyan’s case, (Leech, 26,) Chief Justice Willis, who tried the prisoner, refused an application for a copy of the indictment, only because it was not necessary that he should grant it. He acknowledged the prosecution bore the strongest marks of being unfounded and malicious; and declared, that, by the laws of the realm, a prisoner upon his acquittal, had an undoubted right and title to a copy of the record of such acquittal, for any use he might think fit to make of it; and that after a demand of it had been made, the proper officer might be punished for refusing to make it out. But, at the bottom of this case, the reporter, after noticing the order or rule before mentioned in Kelyng, says, that the same was republished in May Term, 1739, by order of the Court; and in the case of Morrison against Kelly, 1 Blacks. Rep. 385, Lord Mansfield ruled, “ that where a person was indicted for felony, it was necessary that a copy of the record should be granted by the Court, before which the acquittal was had, in order to ground an action for a malicious prosecution upon.” Í think, from a comparison of all those cases, that the practice of our Courts has been conformable to the practice in England, although some of the Judges there did not conform to it. And aslong as our rule of Court remains unreversed, I shall feel bound to say, that no copy of a bill of indictment for felony can be received in evidence, in order to support an *211 action for a malicious prosecution, unless it has been made out in pursuance of an order of the Judge before whom the cause was tried. I was opposed to the introduction of such a rule. I thought the records of one Court ought to be accessible to every person, and that the Clerk was bound to give a copy of the proceeding to any person who should demand it; and, particularly, that a person who had been acquitted of a crime, was entitled to the evidence of his acquittal — it might be necessary for his safety, and his reputation ; and that this Court could not control the officer in that respect. A majority of my brethren thought otherwise, and, I presume, judged more correctly of the matter.
But it still remains to be determined whether this case comes within the rule. I am of opinion it does not. One essential ingredient in an action for a malicious prosecution, is a want of probable cause for the prosecution; and whether there was probable cause or not, is a question of law, and not of fact.
The reason why an order for a copy of the indictment should be obtained from the Judge before whom the cause was tried, I presume is, that having heard the evidence, he is the best judge whether there was probable cause or not; and if he is of opinion there was, he ought to prevent a groundless action from being brought, by withholding the evidence, without which the action cannot be maintained. But that reason does not *212 hold where no bill has been found by the Grand # # J Jury. The presiding Judge can have no opportunity to become acquainted with the circum- " x stances of the case; he has no means by which to determine whether there was probable cause or not. The right of the party, therefore, ought not to depend on his granting or refusing an order for a copy of the indictment. I am of opinion that the motion to set aside tlie nonsuit should be granted.
Colcock, Cheves, Gantt, and Johnson, J. concurred.